UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| HEATHER V. HENSLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:06-CV-033-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Heather V. Hensley seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

**I.   Standard of Review**

Judicial review of the Commissioner's denial of Social Security benefits is limited to two issues: (1) whether the Commissioner's final decision is supported by substantial evidence, and (2) whether the Commissioner used proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citations omitted).

Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

## II.   Statement of the Case

Hensley applied for SSI on August 23, 2003, alleging disability since January 1, 1990, because of bipolar disorder, borderline personality disorder, and Attention Deficit Hyperactivity Disorder (ADHD). (Tr. 104-06, 141.) At that time of her application she was twenty years old and had no past relevant work experience. (Tr. 18, 104.) The records also show that she suffered from aortic stenosis with a septal defect as a child and received Social Security benefits from the age of eight to eighteen, but disability ended when she was eighteen and her cardiac condition was normalized before she filed for SSI in 2003. (Tr. 35, 45.) The records also show that Hensley graduated from high school in regular rather than special education classes but received support services with certain modifications to graduation requirements. (Tr. 180, 182, 206.)

Hensley indicated in application documents that she was not capable of doing things other twenty year old individuals could do and that her mental illnesses limited her ability to work because she was not able to handle stress. (Tr. 115-16, 133.) She further testified that she was unable to work because she experienced "manic episodes," which she described as periods of time in which she could become violent and begin crying and laughing at the same time. (Tr. 38.) According to Hensley and her mother, when violent, Hensley hit, punched, cursed, threw things, and destroyed property. (Tr. 38, 52.) Hensley explained that

2

the episodes lasted thirty minutes to one hour and could occur once or several times per day and she had experienced ten to fifteen episodes in the month prior to the hearing but had experienced laughing and crying during those episodes and had not acted violently. (Tr. 38-39.) Hensley's mother also testified that her daughter experienced "rapid cycles" in which she would laugh, cry, scream, and curse for periods as short as a few minutes and as long as thirty minutes and that she experienced the "rapid cycles" once every one to two weeks. (Tr. 53.)

Although Hensley, her mother, and some of Hensley's physicians believed Hensley suffered from bipolar disorder, other physicians and psychologists and a testifying medical expert believed that her symptoms did not meet the duration requirement or onset pattern for a diagnosis of bipolar disorder and that she suffered from borderline personality disorder rather than bipolar disorder. (Tr. 46, 513, 524, 538.)

The Administrative Law Judge (ALJ) determined at the fifth step of the sequential disability analysis[1] that Hensley was capable of performing work at all exertional levels but was limited to jobs that required less than a moderate concentration deficit, no work with the

---

[1] In order to determine whether an applicant is disabled, the Commissioner considers the applicant's claim under a five-step sequential analysis. 20 C.F.R. § 416.920 (2006); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the sequential inquiry, the hearing officer decides whether the applicant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id.* At the fifth step of the sequential evaluation process, the burden is on the Commissioner to show that, considering the claimant's residual functional capacity, age, education, and past work experience, the claimant can perform work that exists in significant numbers in the national economy. At the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work available in the national economy. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citation omitted). Once the Commissioner makes this finding, the burden of proof returns to the claimant to rebut the finding. *Id.*

general public, only superficial contact with co-workers and supervisors while working, and low-stress job duties. (Tr. 25.) Based on testimony from a vocational expert he determined that Hensley could work as a laundry worker, janitor, or dishwasher, and that she was therefore not disabled. (Tr. 25-27.)

Hensley claims the ALJ failed to carry the Commissioner's burden at the fifth step of the sequential disability analysis because he did not show that she was capable of obtaining and maintaining a job and erred in determining that her mental impairments did not meet the criteria of a listed impairment in the Commissioner's regulations. Hensley also argues that the ALJ disregarded relevant medical evidence and failed to consider the totality of the medical evidence and that his decision is therefore not supported by substantial evidence.

## III.   Discussion

Hensley contends that the combination of her impairments make it impossible for her to maintain steady employment due to the unexpected and repeating nature of her "mental flare-ups" and that she has held very few jobs and that her employment in those jobs was terminated because of her mental condition. She claims the ALJ did not prove that she can perform jobs that exist in the national economy and cites *Gatliff v. Commissioner of Social Security Administration*, 172 F.3d 690 (9th Cir. 1999) in support of her argument. In *Gatliff*, the plaintiff was functionally illiterate and suffered from antisocial personality disorder, developmental reading and expressive language disorder, probable ADHD, and had been certified as a "mentally retarded child for special class placement." *Id*. at 691. The plaintiff held between twenty and thirty jobs for short duration with the longest lasting between six

to eight months but was terminated from at least half the jobs because of anger problems and conflicts with supervisors and co-workers. The plaintiff's wife testified that he regularly had fits of anger which involved throwing and kicking things and punching doors and walls. *Id*. The Commissioner determined that the plaintiff was not disabled finding that although it was unlikely that he could maintain any single job for more than two months, he was not precluded from moving from one job to the next job. *Id*. at 692.

The Ninth Circuit Court of Appeals rejected the Commissioner's conclusion and held that a claimant who can hold a job for only a short period of time is not capable of engaging in substantial gainful activity. *Id*. at 694. Following other circuit precedent, including the Fifth Circuit Court of Appeals in *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), the court held that a claimant is not capable of engaging in substantial gainful activity unless he cannot only find a job and physically perform it but can also hold the job for a significant period of time. *Id*.

In *Singletary*, Fifth Circuit Court of Appeals reviewed the Commissioner's denial of benefits to a plaintiff with personality disorder who suffered from schizophrenia, delusions, antisocial personality, inadequate personality, and a passive-aggressive personality and who had a history of being incapable of maintaining a job for a significant period of time. 798 F.2d at 819, 822-23. The court acknowledged that it is often difficult to predict the course of mental illness because symptoms may wax and wane; individuals with mental illness may experience symptom-free periods indicative of remission that are of uncertain duration followed by relapses or unforeseeable mental setbacks. *Id*. at 821. Therefore, in

5

cases in which a claimant's mental illness waxes and wanes, it must be determined whether the claimant cannot only obtain but maintain employment. *Id*. at 822. (It must be determined whether the claimant "can hold whatever job he finds for a significant period of time.") The Fifth Circuit Court of Appeals has since clarified the directives in *Singletary* holding that the ALJ is not required to make a specific finding regarding the claimant's ability to maintain employment in every case; rather, such a finding is required only when the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (2003). Thus, a separate finding in regard to a claimant's ability to maintain work is not required unless the claimant establishes intermittently recurring symptoms that are of sufficient frequency or severity to prevent him or her from holding a job for a significant period of time. *Id*. at 619-20; *see also Dunbar v. Barnhart*, 330 F.3d 670, 672 (2003) (reiterating that the ALJ need not make a specific finding in every case that the claimant can maintain employment).

In this case there is no evidence that Hensley suffered from mental impairments that waxed and waned and would require the ALJ to make a separate and explicit finding that she was capable of maintaining employment. Hensley's argument that her mental "flare ups" preclude her from maintaining work and that she has been terminated from past jobs because of her mental condition is unfounded. Hensley testified that she worked with pre-kindergarten children in a vocational program during high school and that she worked at a telephone answering service for two weeks. (Tr. 37.) There is no evidence in the records that Hensley was terminated from any of the foregoing jobs because of her mental conditions.

6

In regard to her job at the telephone answering service, Hensley's employment was terminated not because of her mental impairments but because she failed to show up for a shift. (Tr. 550.) Further, finding and maintaining employment was a prerequisite to obtaining a high school diploma, and according to an assessment from a teacher or administrator at Hensley's high school her work with pre-kindergarten students was "highly effective" and the pre-kindergarten teachers with whom Hensley worked gave positive feedback. (Tr. 165, 185.)

The evidence does not indicate that Hensley experienced waxing and waning symptoms or that her mental illness presented symptoms of an uncertain or sporadic duration. In fact, the evidence indicates that she was capable of controlling her emotional outbursts. The emotional outbursts Hensley experienced were primarily directed toward members of her family and her boyfriend and occurred in private. (Tr. 38-39, 51-52.) Although Hensley testified that she sometimes anticipated an episode when she was in a public place, she was able to control her behavior. For example, she testified that when she had an episode in a store she would "walk off and go to the bathroom." (Tr. 41.) She also testified that she and her boyfriend sometimes went to movies and went swimming and that she sometimes had an episode while swimming but was able to "get out of the pool and go sit down." *Id*. Finally, the fact that Hensley cared for children indicates that she was capable of controlling her temper and "violent spells" in situations that may at times be stressful. (*See* Tr. 518, 522.)

The medical evidence also shows that Hensely was able to maintain her composure in public. Elizabeth Davidson, M.D., was one of the psychiatrists who treated Hensley.

7

Although Hensley reported that her mood was very unstable, Dr. Davidson found that her affect was calm and she was pleasant and noted "this is the way she has looked every time I have seen her." (Tr. 513; *see also* Tr. 539.) In addition, although Hensley and her mother claim she has bipolar disorder and experiences uncontrollable manic episodes and rapid cycling (Tr. 37-38, 51, 53), the medical evidence contradicts their claims.

Dr. Davidson and Matt Houseal, M.D., psychiatrists at Lubbock Regional Mental Health and Mental Retardation facility (MHMR), believed Hensley did not suffer from bipolar disorder. After Hensley expressed dissatisfaction with these opinions, E. Pascua-Lim, M.D., evaluated her and recommended that she undergo a formal psychological evaluation to determine a correct diagnosis, and Hensley agreed to undergo an evaluation. (Tr. 540, 544.) Formal testing showed that Hensley did not meet the criteria for major depressive or biploar disorders because her symptoms did not meet the duration criteria of the disorders; her symptoms were more consistent with emotional instability and Borderline Personality Disorder (Tr. 520, 523, 524.) This determination was based in part on Hensley's report that her symptoms of mania did not last for four or more consecutive days. (Tr. 523.) Hensley was thereafter diagnosed at MHMR with Depressive Disorder Not Otherwise Specified and Borderline Personality Disorder.[2] (Tr. 513, 524.)

---

[2] Hensley reported to a clinician at MHMR that "if [my physicians] don't diagnose me with biploar – I fire them. I need my disability." (Tr. 547.) Although Hensley believed she had bipolar disorder, based on her own testimony and reports to physicians, she did not meet the criteria of bipolar disorder. Hensley testified that she experienced behavioral outbursts that were sporadic and unpredictable and indicated during psychological testing that her symptoms of mania did not last for four or more consecutive days. (Tr. 38, 52-53, 523.) Hensley's symptoms do not meet the criteria of bipolar disorder because her behavioral outbursts are not manic episodes. According to the Diagnostic and Statistical Manual of Mental Disorders, a manic episode is defined as a distinct period during which there is an abnormality in

8

As the foregoing demonstrates, there is no evidence that Hensley experienced debilitating mental limitations that presented symptom-free intervals followed by relapses that would preclude employment; therefore, the ALJ was not required to make a separate determination that Hensley could maintain employment. *Frank*, 326 F.3d at 619. Further, testimony from a medical expert, reports from consulting physicians, and other medical evidence in the record substantially supports the ALJ's determination that Hensley was capable of performing jobs that required less than a moderate concentration deficit, no work with the general public, superficial contact with co-workers and supervisors while working,

---

mood that lasts at least one week AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 357 (4th ed. 2000) (DSM-IV). Further, contrary to her mother's testimony, Hensley's "rapid cycling" does not meet the definition of that term as defined in the DSM-IV. Hensely's mother described Hensley's "rapid cycling" as periods during which Hensley rapidly alternated between crying, laughing, and cursing that lasted a few to ten minutes in duration and occurred once every one to two weeks. (Tr. 53.) According to the DSM-IV, rapid cycling is the occurrence of four or more mood disturbances during a twelve-month period with demarcations of partial or full remissions for at least two months or a switch to an episode of opposite polarity. *Id.* at 427-28. Thus, the short-term behavioral disturbances Hensley's mother described may have involved rapid changes in mood but were not the clinical disorder of "rapid cycling" seen in individuals with bipolar disorder.

and low-stress job duties. Hensely's argument that the ALJ erred at the fifth step of the disability sequential analysis must be rejected.

The court must also reject Hensley's argument that her mental condition satisfies the criteria of a listed impairment in the Commissioner's regulations. Hensley argues that she meets a listing because the combination of her impairments presents marked restrictions in daily activities, marked difficulties maintaining social functioning, frequent deficiencies of concentration, persistence, or pace, and repeated episodes of deterioration or decompensation in work or work-like settings. She supports her argument by pointing to evidence regarding her inability to maintain substantial and gainful employment and her pattern of violent spells.

Disability is conclusively presumed if a claimant's impairments meet or equal the criteria of one of the listed impairments in the Commissioner's regulations. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000) (citation omitted). The listed impairment most applicable to Hensley's mental conditions is Listing 12.04, the listing for Affective Disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04. A claimant can show that he meets the criteria of Listing 12.04 by showing under the "A" and "B" criteria of the listing that he has either depressive syndrome, manic syndrome, or bipolar syndrome which results in marked restrictions and/or repeated episodes of decompensation. *Id*. In the alternative, he may demonstrate under the "C" criteria that he meets the listing by showing a medically documented history of a chronic affective disorder that has caused more than a minimal limitation in ability to do basic work activities and extreme limitations related to decompensation. *See id*.

The claimant bears the burden of proving with medical evidence that each of the criteria of a specific listing are met. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); *see also* 20 C.F.R. §§ 404.1525(c), 404.1526(b). In order to meet the criteria of Listing 12.04 Hensley must show that her symptoms meet both the "A" and "B" criteria of the listing or the "C" criteria of the listing. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04. Hensley has not met this burden. Even if the court were to assume, *arguendo*, that Hensley's symptoms meet the "A" criteria of the listing, her symptoms do not meet the "B" criteria. The "B" criteria are met when the claimant shows at least two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and/or repeated episodes of decompensation. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04. The term "marked" in the listing is defined by "more than moderate but less than extreme." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C).

Hensley has not shown and the records do not show that she experiences marked restriction in activities of daily living. (*See e.g.*, Tr. 298-99, 915.) Other than showing anger and acting violently toward family members and her brother, Hensley has not shown and the records do not show that she experiences marked difficulties in maintaining social functioning. (*See e.g.,* 39, 47, 165, 191, 521, 550. 915.) Further, she has not shown that she experiences marked difficulties in maintaining concentration. (*See, e.g.* Tr. 150, 251, 261, 279, 300.) Finally, although Hensley argues that her inability to maintain employment and her violent spells demonstrate that she has suffered repeated episodes of decompensation, this

11

argument must be rejected because such behavior does not represent episodes of decompensation as that term is explained in the regulations. The regulations direct that episodes of decompensation may be inferred from medical records showing significant alteration in medication or documentation of the need for a more structured psychological support system such as hospitalizations or placement in a halfway house or a highly structured household situation. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C)(4). As the testifying medical expert stated, there are no medical records indicating such a situation during the relevant period. (Tr. 47; s*ee* Tr. 522.)

Hensley has not shown and the medical records do not show that her symptoms meet the "C" criteria of Listing 12.04. There is no evidence of repeated episodes of decompensation, a residual disease process that would subject her to decompensation upon minimal increases in mental demands or changes in the environment, or a history of inability to function outside a highly supportive living arrangement. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04. Because Hensley has not shown that her mental condition meets each of the criteria of Listing 12.04 or any other listed impairment, her argument that the ALJ erred at the third step of the sequential disability analysis must be rejected.

Hensley complains that the ALJ disregarded the opinion of Anan Patel, M.D., failed to consider the totality of the medical evidence; and did not provide evidence to substantiate his finding that she could maintain substantial gainful employment despite her impairments. In support of her argument that the ALJ disregarded the opinion of Dr. Patel, Hensley cites *Goodley v. Harris*, 608 F.2d 234 (5th Cir. 1979), which she contends requires the ALJ to

support the dismissal of a medical opinion with relevant and credible evidence. Hensley's argument must be rejected. In *Goodley* the court held that an ALJ may not arbitrarily choose to ignore uncontroverted medical opinion that indicates a claimant is disabled. *Id*. (citing in part *Mims v. Califano*, 581 F.2d 1211 (5th Cir. 1978)). Since its decision in *Goodley* the Fifth Circuit Court of Appeals has addressed the subject of treating physician opinion in a number of cases. *See, e.g., Frank*, 326 F.3d at 618; *Newton*, 209 F.3d at 448; *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994).

Under the foregoing precedent an ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56; *Greenspan*, 38 F.3d 237. However, in cases in which there is an absence of first-hand competing medical evidence that would contradict the opinion at issue, the ALJ is required to consider the factors set forth under 20 C.F.R. §§ 404.1527(d), 416.927(d). Under Section 404.927(d), an ALJ must consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 448 (citing 20 C.F.R. § 404.1527(d)).

The opinions at issue were provided by Dr. Patel at Hensley's request in a "Mental Impairment Questionnaire" on April 26, 2005. (Tr. 910-16.) Dr. Patel indicated that Hensley suffered from bipolar disorder and physical impairments including aortic stenosis. Among

13

his opinions was that Hensley's impairments would cause her to miss work about once a month and that she had poor to no abilities in areas such as carrying out simple instructions, maintaining attention for two-hour segments, dealing with normal work stress, and sustaining regular attendance and punctuality. (Tr. 913-14.)  Although Hensley contends the ALJ "brushed aside" Dr. Patel's opinion, the ALJ devoted an entire page of his decision to analyzing the opinion. (Tr. 22-23.)  Further, the ALJ applied the proper legal standards set forth in *Newton*.  He acknowledged that Dr. Patel provided Hensley with psychiatric treatment and considered the treating relationship between Hensley and Dr. Patel including the length and frequency of treatment and the nature and extent of the treatment relationship. (Tr. 22.)  He also determined that Dr. Patel's opinions were not supported by or consistent with the doctor's own treatment records. *Id*.

The ALJ's decision is supported by substantial evidence.  As the ALJ noted, Dr. Patel saw Hensley only once every three months, which demonstrates that Hensley's condition was stable rather than unstable, and the notes from Hensley's office visits preceeding the opinion indicate that she was cooperative, alert, and oriented; her memory was intact, thoughts were logical and goal oriented, intelligence was average, and perception was normal; and her insight and judgment were fair to good.  (Tr. 887, 889, 894, 896, 903, 907.)

Finally, contrary to Hensley's arguments the ALJ considered the totality of the medical evidence, and there is substantial evidence to support the ALJ's determination that Hensley could engage in substantial gainful activity.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the

14

decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Under this standard the court is not permitted to reweigh the evidence or substitute its own judgment for that of the Commissioner. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Even in a case in which the evidence indicates a mixed record concerning a claimant's health problems and limitations upon his ability to work, it is the ALJ's responsibility to weigh the evidence; the court is then charged with determining whether there is substantial evidence in the record as a whole to support the ALJ's determination. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (citation omitted). In this case, because substantial evidence supports the ALJ's decision, it must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).

## IV.  **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Hensley's complaint with prejudice.

## V.      **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   August 15, 2006.

_____
NANCY M. KOENIG
United States Magistrate Judge